We will start with the United States v. Mellon. Thank you. Good morning, Your Honors. My name is Frank Aguilino. I represent the defendant, Appellant James Ross Mellon II. This is an appeal from the Order Enforcing an Internal Revenue Service Summons issued to Mr. Mellon. The court below enforced this summons without what we contend was a necessary evidentiary hearing. We believe that the evidentiary hearing was necessary to establish jurisdiction, personal jurisdiction under Code Section 26 U.S.C. 7603, subject matter jurisdiction under 7604, and also to enforce the summons whether or not the Powell test, which is the administrative steps required by the code, were taken prior to the enforcement of the summons. We believe that the record below establishes enough of a factual dispute as to the issue of whether or not Mr. Mellon's last and usual place of abode was Fifth Avenue, New York City, that there should have been an evidentiary hearing required by United States v. Clark. Did you request it? Did we request it? We would say by opposing the motion and going to oral argument. By going to oral argument, is that what you just said? Yes. That's usually the procedure that I've always followed, is we call the judges' chambers and ascertain whether or not we're going to have witnesses on the date of the return date of the order to show cause. The judges will tell you, yes, you have to bring your witnesses that day, or no, we'll have an oral argument, and then we'll schedule the witnesses another day. So that has always been the procedure in summons enforcements. But you did submit, as part of your declaration, the supporting evidence that you believed supported your case, right? Yes, and to establish that there was . . . to meet the Clark standard. You don't . . . okay, summons enforcements are summary proceedings. You don't automatically get an evidentiary hearing.  has to establish a factual dispute that would overcome the presumption of regularity that comes with the IRS agent's affidavit. Usually those factual disputes focus on the legitimate purpose, but here the factual dispute went to the threshold matter, whether or not the agency had jurisdiction. Did they comply with 7603 so that the agency had jurisdiction? And if they complied with 7603, did the United States District Court in the Southern District of New York have jurisdiction under 7604? I was curious about that, too. Did you raise 7603 with the District Court? Yes. I mean, we contested summons. In fact, we made . . . In his opinion, his oral opinion, he talked about 7603. Yes. Right? I think what happened in the judge's opinion, his oral opinion, is he conflated an internal revenue service summons with a grand jury subpoena so that he didn't understand that there's two levels of inquiry here. First, did the agency acquire jurisdiction over the witness? Second, did the District Court then have jurisdiction to resolve the dispute between the agency and the witness, which are two very different threshold findings. I mean, this is not a grand jury subpoena issued by the court itself. The United States is an agency of the United States government. The agency has the power to do investigations under 7602. That is what happened here. They started an investigation in 2012 based on a confidential informant. The investigation was secret until such time that the government issued third-party summonses. In this background, the critical question, it seems to me, on both the statutory and jurisdictional issues, is whether or not this could be viewed as one of the dwellings and usual places of abode of your client. Because we have recognized that a person can have more than one dwelling and usual place of abode. Now, what do you identify as the error in the conclusion that an apartment that he'd owned for 20 years, that there was reason to think he resided in when he was in New York, that his wife resided in, that he listed his address as the residence on New York Bank and IRS documents, what's the error in concluding that that was one of his dwellings and usual places of abode? The district court wrote out of the statute the words, last and usual place of abode. That's a different statute. That's 7603, though, right? Correct. That's an IRS administrative statute. Judge Radji is just asking you about Rule 4, right? Well, we don't get to Rule 4 unless we have jurisdiction. First, the agency has to acquire jurisdiction by issuing a summons under 7603. If they don't issue a summons to the taxpayer at his last and usual place of abode, we never get to 7604, which requires that a summoned person be held to account. But in his declaration, Agent Frangipane, I hope I'm saying his name correctly, said it's his last and usual place of abode, which is the language in 7603. Don't you then have the burden under Powell to show that it wasn't? Well, first, we would contend that the government always has the burden to establish the threshold issue of jurisdiction. First, you establish jurisdiction. Then, under the Powell factors, the fourth of the factors is that all administrative steps under the code have been taken. But we don't get to even 7604 until the agency itself summonses the taxpayer under 7603. And that didn't happen. That's where we have a factual dispute, because we contend that the evidence was conflicting. When the Internal Revenue Service sent the notices under 7609, they sent them to Switzerland. We put in declarations of taxpayers, of witnesses, who would say that Mr. Mellon hadn't been in the apartment, didn't reside in the apartment, and that the passport information, had we had an evidentiary hearing, would have demonstrated he wasn't in the United States in 2014, which is the temporal period of time. Remember, there's a staleness problem here that causes the error. The investigation starts in 12. Mr. Frangipane's declaration talks about events in 12. They waited two years. They didn't summons this taxpayer until 2014. And the case law is clear that you test a summons on the date that it's issued. If we're focusing on the date that the summons was issued in 2014, Mr. Mellon was no longer at Fifth Avenue as his last and usual place of abode for purposes of 7603. If the agency never acquired jurisdiction over him under 7603, he wasn't a summoned person for purposes of district court jurisdiction under 7604. This was a matter of discussion in the district court. The agent acknowledged that he had received mail from Mr. Mellon shortly before sending the complaint from a Switzerland address. But he averred that Mellon's Fifth Avenue apartment was his last and usual place of abode, which is something distinct, and the district court accepted that. But we weren't allowed to cross-examine the agent, and that's what Clark would require. Why do you need to cross-examine the agent? Why didn't you put in evidence if you wanted to put in evidence that he no longer had anything to do with the Fifth Avenue apartment? We did. We put in the declaration of the wife. Right, so that was before the district court, and it got decided against you. But again, a credibility determination on the facts eliminates what Reisman versus Kaplan, Powell, and United States versus Clark say. Although it is a summary proceeding, once you establish the necessary factual dispute, then we would are entitled to cross-examine the agent on the carefully crafted affidavit that it studiously avoided talking about 2014. Is that in the light most favorable to you, that the agent was just making that assumption, but what the record also contained was your client providing his address, his New York address on account opening a form with BNY Mellon and on the IRS Form 2848. So your client's own words supported that this was his usual place of abode. No, the form itself and the instructions of the form say that putting that as the address to receive mail is not going to establish residence. So the form doesn't ask for residence. It asks for an address to get mail. I mean, many people, many foreigners own real estate in New York City, and you would not say the mere ownership of real estate made them subject to the Internal Revenue Service taxation. I mean, in a global world, we have that. That's one factor, but we should have been allowed to put on evidence, cross-examine the witness as to the other factors, including, you know, what the IRS records showed from his passport as to how many times he'd been in the United States during that period of time. When you're using words like last and usual place of abode as opposed to address, that requires more of a permanence. How do you think 7609 plays in this? Because it provides for service of the notice of a third-party summons either following the procedure set forth in 7603A or by mailing to the last known address. Right. So 7609 just is not issue determinative because the words on all three statutes are different, which makes for the ambiguity. I mean, 7603 talks about the last and usual place of abode. That's for the agency to acquire jurisdiction. 7609 provides notice because the Internal Revenue Service has contacted third parties, and that notice is sent to what the government knows is the last known address, the best address to get mail. So that would not be issue determinative, but it would be relevant at a factual hearing to determine what is, for purposes of 7603, the last and usual place of abode to acquire jurisdiction. Do you have reserved rebuttal? I have, Your Honor. Thank you very much. Good morning, Your Honor. May it please the Court. My name is Jacob Lillywhite. I represent the United States, the petitioner at Pele in this IRS summons enforcement case. I just want to jump straight to some of the points raised by my brother here. First, with respect to the evidentiary hearing, Judge Stroni is exactly right. There was no request below. There was no citation of Clark and argument that some threshold had been met that would require an evidentiary hearing. There wasn't a request either in connection with the motion to dismiss or at the actual hearing that was held where there was limited argument. There was no request. And beyond that, which under this circuit's precedent means that to the extent there was any right, it has been waived, the circuit has also held, and this is, I should say briefly, this is a very different circumstance than Clark. This is not a circumstance, number one, where the taxpayer requested evidentiary hearing, number one, but number two, where there is plausible evidence showing bad faith, and that was the thrust of the argument. The question here has never been did Agent Frangipane summons Mr. Mellon in bad faith. It wasn't actually in connection with the legitimate investigation. The only allegations of bad faith that Mr. Mellon has put forward have to do with whether or not Agent Frangipane really believed that 1107 Fifth Avenue was the proper place for service. It doesn't have to do with whether or not the summons itself was actually issued in good faith. And so we are far outside of Clark. There has been a waiver on that point. And in addition to that, there's certainly no evidence that Mr. Mellon has suggested he didn't have access to, putting in some other form like a declaration or an affidavit, and certainly hasn't proffered anything in particular saying if I had had this, it would have changed things. And I'd also just note, I mean, there's also a question, you know, when Mr. Mellon did in fact appear, pursuant to the court's order below, he raised the Fifth Amendment and refused to answer any substantive questions about the amount of time he spent in various places. And that's precisely why the IRS sent the summons. We're trying to get this information. But to suggest that Mr. Mellon, who has himself possession of all of the information he would need here to defend this, he could say, and he hasn't, he could say, this is how much time I've spent at 1107 Fifth Avenue in 2016. This is how much time I've spent in these other residences. He hasn't done that. He's been completely silent. And instead, the evidence we have, I mean, Judge Raji, you know, went through some of the evidence the government put forward, which is extensive and includes Mr. Mellon's own words. And the response from Mr. Mellon has not been to dispute the accuracy of any of those documents, but rather to say, here are declarations suggesting that he also spends time elsewhere, including in Europe. He has residences in Europe. And there is certainly no inconsistency, as the circuit held in the Rule 4 context, between those two things. No, no, go ahead. Oh. And so, having addressed that just briefly, there are three distinct legal issues here, as Your Honors just heard from Mr. Mellon's counsel. The first is personal jurisdiction. The second is the enforceability of the summons under Powell. And then the third is subject matter jurisdiction. With respect to personal jurisdiction, the question really is, as Judge Raji said, is there a clear error in the factual finding of the district court on this record that 1107 Fifth Avenue had sufficient indicia of permanence under this court's rule in National Development Co. to qualify as a dwelling house or usual place of abode? And it's difficult to see, given that Mr. Mellon still to this day has not disputed that he resides at 1107 Fifth Avenue when in New York City. Hasn't disputed, as Agent Frangipane put in the declaration, that he often spends more than half of the year in the United States. And in fact, that we don't know of residences. Mr. Mellon hasn't suggested any residences in the U.S. outside of New York. And so, on this record, with the mountain of evidence the government put forward, and the very limited evidence that's not inconsistent put forward by Mr. Mellon, I'd submit it is not clear error for the district court to have found that personal jurisdiction was correctly granted here. I would also, just turning quickly to the Powell factors, note that this is not an argument, although Mr. Mellon did raise issues with compliance under 7603 below, and he argued that 1107 Fifth Avenue was not the last unusual place of abode, which is, you know, one of the requirements in terms of service under 7603. He never raised an argument under Powell. He said that what that does is it destroys subject matter jurisdiction. He never raised Powell, and so the district court didn't specifically address Powell and the burden-shifting framework that would apply because it was simply never raised and therefore was waived. But in any case, in this context, clearly, under Powell, the minimal threshold has been met for the government. The burden would shift to Mr. Mellon as this court and the Supreme Court has recognized that burden is a heavy one, and he has certainly not disproved that 1107 Fifth Avenue was, in fact, his last unusual place of abode. The fact that he was staying at what appears to be his wife's family's Swiss chalet for some period of time doesn't disprove that 1107 Fifth Avenue remained his last unusual place of abode, even if he had spent some time outside. Unless Your Honors have any further questions. I just had a question about 7603. Was there a finding by the district court of the last unusual place of abode? Yes, Your Honor. Do you know where it was? I couldn't find it in his oral order or in the written. Yes, Your Honor. I believe it's in the oral order, and I'm going to point you to that. So I believe it is on the appendix, page 265. Can you just tell me what page of the transcript that is? Oh, sure. Yeah, it's page 16 of the transcript. Thank you. And this is where he's talking, and at the end of the paragraph actually quotes the phrase from 7603, saying he rejects Mr. Mellon's claim that Fifth Avenue apartment was not his, quote, last unusual place of abode. What line is that? Sorry? I just am missing. Oh, sorry. So that's lines 20 and 21. Okay. He doesn't cite the statute, but that's the standard, right? Right, right. He quotes language from the statute. Okay. Thank you. Unless Your Honor has any further questions. Thank you. Thanks very much. If I may. First, we don't get to the Powell standards until we first have jurisdiction under 7603, personal jurisdiction, and then that the district court has subject matter jurisdiction under 7604. We had made a special appearance to contest jurisdiction in this matter, so that we raised the jurisdictional issue, and jurisdiction is something that should be proven by the moving party. Then, with respect to the standard review, to the extent that we contend that the district court read out of the statute the words last and just went with residence or usual place of abode, applied a wrong legal standard, that that is enough to establish clear error. And also, remand would be required because there is a sufficient factual dispute as to jurisdiction on both parts, in the submissions, that there should have been an evidentiary dispute. Now, as to the fifth, I mean. There wasn't a finding on that? He said that it should be construed liberally. It's in quotation marks, even. Last and usual place of abode, in quotation marks. He cited the rule, but then he stopped. He didn't make a finding that it's his last and usual place of abode. Mr. Mellon's claim that his Fifth Amendment apartment was not his, quote, last and usual place of abode clearly fails. That's not a finding? Again, I thought it was just he's saying that this is what PAA says. I mean, you'd have to infer that he then found last and usual, but what facts support last and usual? How do we review that net opinion? Subject matter jurisdiction, why isn't it enough that under 28 U.S.C. 1340, the district courts have subject matter jurisdiction over any civil action arising under any act of Congress providing for internal revenue? We did cover that in the briefs, but in 1345 it says except as otherwise provided. And there is the statutory scheme in 7603 and 7604, which is the more specific. I mean, this action is a review of agency action, right? And as opposed to in 7603 and 7604. It's always been sui generis. The cases cited in the oral opinion and the cases cited by the government always have a string site that you include this. But there is no case that it's ever directly found that you get jurisdiction other than under 7603 and 7604. Thank you. Thank you very much, Your Honor. Thank you both. We'll reserve decision.